IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| WENSESLAO HERNANDEZ, ROSANA HERNANDEZ, and FRANK HERNANDEZ,<br>　　Plaintiffs,<br><br>v.<br><br>CHRISTOPHER SIERRA, TOWN OF ANTHONY, TEXAS, E.B.; R.D.; R.E.; S.W.; and UNITED STATES OF AMERICA,<br>　　Defendants. | §<br>§<br>§<br>§<br>§<br>§　EP-22-CV-00201-DB<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

## MEMORANDUM OPINION AND ORDER

On this day, the Court considered three motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendants Town of Anthony, Texas ("Town of Anthony"), ECF No. 46[1], Officer Christopher Sierra ("Officer Sierra"), ECF No. 49, and E.B, R.D, R.E., and S.W. (collectively "Deputy U.S. Marshals"), ECF No. 66, (collectively "Defendants"). On July 6, 2023, the Court issued a short order granting Defendants' motions, respectively, noting a memorandum opinion was forthcoming. Order, ECF No. 76. Because the allegations in the Plaintiffs Wenseslao Hernandez, Frank Hernandez, and Rosana Hernandez's (collectively "Plaintiffs") "Second Amended Complaint," ECF No. 43, against Defendants are substantially similar, as are the arguments in support of dismissal, the instant "Memorandum Opinion and Order" collectively addresses all three motions. For the foregoing reasons, Defendants' motions to dismiss are hereby GRANTED.

---

[1] "ECF No." refers to the Electronic Case Filing number for documents docketed in this case. Where a discrepancy exists between page numbers on filed documents and page numbers assigned by the ECF system, the Court will use the latter page numbers.

## BACKGROUND

      A.      Factual Background

This action arises from the mistaken arrest of Plaintiff Wenseslao Hernandez ("Plaintiff Hernandez"). Plaintiff Hernandez was mistakenly arrested pursuant to an arrest warrant for a fugitive with nearly the same name, the same date of birth, and similar physical characteristics. At the Rule 12(b)(6) motion to dismiss stage, the Court must limit itself to the contents of the pleadings[2]. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). The following are the facts as alleged by Plaintiffs in their Second Amended Complaint.

On January 3, 2019, an arrest warrant was issued in Florida for Wenceslao Gerardo Hernandez ("Fugitive Hernandez") on a charge of "sexual battery". Second Am. Compl. 8, ECF No. 43. Fugitive Hernandez was described as a five-foot-eight male weighing about 160 pounds, with gray hair, and a September 28, 1960 date of birth. *Id.* at 10. This is the same warrant officers sought to execute at the time of the underlying incident in this case. *Id.* at 8. The Jacksonville Sherriff's Office ("JSO") was the lead investigative agency on this outstanding warrant. *Id*. at 7. In early 2020, Plaintiff Hernandez applied for a passport renewal with his full name: Wenseslao Hernandez. *Id.* at 5. In this application, he included his driver's license information including a photo, his date of birth as September 28, 1960, and his address as 1594 Da Vinci St., El Paso, TX 79936. *Id.* Plaintiff Hernandez is described as a five-foot-nine male weighing 220 pounds with

---

[2] This "Memorandum Opinion and Order" references the factual allegations as they existed when this Court issued its short order on July 6, 2023, ECF No. 76. Therefore, the Court declines to consider any facts, exhibits, or pleadings outside of the Second Amended Complaint, and limits itself to the pleadings mentioned in this opinion in evaluating the parties' arguments.

black hair. *Id.* at 10.  "Between April and June of 2020, he received a notice that processing of his application had been delayed, with no explanation." *Id.* at 5.

"At no time relevant in this matter was there an active state or federal warrant issued for the arrest of Plaintiff [] Hernandez." *Id.* at 12.  However, the United States Marshal Service ("USMS") Lone Star Fugitive Task Force[3] ("Task Force") in El Paso, Texas, which employed the Deputy U.S. Marshals, had access to Plaintiff Hernandez's "entire [passport] application" . . . "during a routine [National Crime Information Center] computer search for fugitives sought by agencies participating in the" Task Force. *Id.* at 5.  Officer Sierra was a law enforcement officer employed by the Anthony Police Department ("APD") but worked in conjunction with the Task Force to carry out the operation that led to the arrest of Plaintiff Hernandez. *Id.* at 3–4.  Non-USMS law enforcement officers assigned to the Task Force are deputized as Special Deputy U.S. Marshals, but the participating agencies, including federal, state, and local law enforcement agencies "supply their personnel with the standard issue equipment necessary for performance of their duties, to include handcuffs, firearms, and other equipment." *Id.* at 7.

On November 19, 2020, Officer Sierra and the Task Force "breached and burst through the front door of the Hernandez[] residence with their firearms unholstered and prominently displayed." *Id.* at 8.  "These law enforcement agents were equipped with firearms,

---

[3] The Court notes Plaintiffs' Second Amended Complaint uses "USMS Violent Offender Task Force" to refer to the agency involved. Second Am. Compl. 4, ECF No. 43. However, this Court sua sponte takes judicial notice that the official name of this agency is the "Lone Star Fugitive Task Force" within the United States Marshals Service. U.S. MARSHALS SERVICE, https://www.usmarshals.gov/local-districts/western-district-of-texas, https://perma.cc/WD6J-M7R3 (last visited February 13, 2025).  The Marshals Services is a part of the United States Department of Justice. U.S. MARSHALS SERVICE, https://www.usmarshals.gov/who-we-are, https://perma.cc/CQ9W-H5GP (last visited February 5, 2025).

tactical uniforms, body armor, handcuffs, and face coverings or masks which concealed their identity." *Id.* Officer Sierra "was equipped with part of such equipment from his participating agency, the APD, and utilized this equipment and USMS VOTF equipment to effectuate the unlawful assault and unlawful arrest of Plaintiff Wenseslao Hernandez." *Id.* at 8. Plaintiff Frank Hernandez was the only other person home at the time. *Id.* at 9. Frank was "seized, assaulted, restrained, and handcuffed at gunpoint," and "[o]ne of the law enforcement agents pointed a firearm directly at Plaintiff Frank Hernandez' face." *Id.* Frank was then "pulled [] outside, slammed [] against the exterior wall of the house, and handcuffed." *Id.*

Meanwhile, Plaintiff Hernandez was "showering preparing to go to work at Vinton Steel in El Paso County, Texas." *Id.* Once officers located Plaintiff Hernandez inside the home, officers "forcibly arrested [Plaintiff Hernandez] while he was partially, if not completely, naked." *Id*. at 10. "Law enforcement agents informed Plaintiff [] Hernandez that a warrant for his arrest had been issued by authorities in the State of Florida . . . and was shown documentation supporting the warrant on the phone of one of the agents." *Id.* "Plaintiff Wenseslao Hernandez informed the agents . . . [he] does not have a middle name[,] . . . that his first name was spelled with two "s's" and not with a "c" and an "s[,]" . . .[and] he had never been to the State of Florida." *Id.* at 10–11. The image shown to Plaintiff Hernandez appeared "to have been taken from his own social media accounts and not from an official source such as a booking photograph or mugshot." *Id.* at 11. Then, "Rosana Hernandez arrived at the residence and witness the aftermath" of the incident that had just taken place. *Id.*

Plaintiff Hernandez was then taken to the El Paso County Jail for booking. *Id.* at 13. When Officer Sierra applied for the arrest warrant to book Plaintiff Hernandez into the jail,

"he did not tell the Magistrate the critical discrepancies between the names and states of driver's licenses." *Id.* at 12. The jail sought "confirmation that they had the right man in their custody," and Florida authorities sent confirmation including Fugitive Hernandez's identifying information, his driver's license number, and last known Florida address. *Id.* Plaintiffs allege that "[e]ven assuming the agents behaved lawfully up to formal booking, from that point on [Officer Sierra] had information which would have alerted any reasonable peace officer in his position of the almost near certainty that the arrest team had the wrong man." *Id.* Plaintiffs assert that the officers "either made no effort or no reasonable effort to investigate or reconcile the inconsistencies, discrepancies, or variances in the identity of the individual they sought under [the] Florida arrest warrant and Plaintiff Wenseslao Hernandez." *Id.* at 14. "In total, Plaintiff [] Hernandez spent five (5) days and four (4) nights in jail . . . based on a warrant issued for the arrest of another individual." *Id.*

        B.      Procedural History

On November 2, 2022, Plaintiffs filed their "Second Amended Complaint", the operative pleading in this case. Second Am. Compl. ECF No. 43. In their Second Amended Complaint, Plaintiffs asserted seven claims against multiple defendants including the Town of Anthony, Officer Christopher Sierra, individual U.S. Deputy Marshals, and the United States. *Id.*[4] On July 15, 2022, this Court dismissed all claims brought under state law against Officer Sierra, including claims for assault, intentional infliction of emotional distress, violations of the Texas Tort Claims Act, negligence, and gross negligence. *See* Order Granting Def. Town of Anthony,

---

[4] Relevant here are counts four through seven alleged in Plaintiffs' Second Amended Complaint. *See* Second Am. Compl. 17–22, ECF No. 43.

Texas' Mot. To Dismiss Def. Christopher Sierra Under the Texas Civ. Practice & Remedies Code Election of Remedies Provision, ECF No. 16. As a result, the only remaining claim against Officer Sierra is Plaintiffs' claim under *Bivens*[5]. *Id.* Then, on July 6, 2023, this Court issued a short order summarily dismissing all claims raised against the Town of Anthony, Officer Sierra, and the individual Deputy U.S. Marshals. Order, ECF No. 76. In its short order, the Court noted a memorandum opinion was forthcoming, which is the instant opinion. In issuing its memorandum opinion, the Court takes the facts as they existed at the time the short order was issued on July 6, 2023, as opposed to any facts that came to light later in this litigation. The Court considered the following pleadings in reaching its conclusions:

- ECF No. 43, "Plaintiffs' Second Amended Complaint"
- ECF No. 46, "Defendant Town of Anthony, Texas' Rule 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint"
- ECF No. 49, "Defendant Sierra's Motion to Dismiss Plaintiff's Second Amended Complaint"
- ECF No. 57, "Plaintiffs' Combined Response to Motions of Christopher Sierra and the Town of Anthony to Dismiss Plaintiffs' Second Amended Complaint"
- ECF No. 59, "Corrected Defendant Town of Anthony, Texas' Reply Brief in Support of its Rule 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint"
- ECF No. 63, "Defendant Sierra's Reply to Plaintiffs' Combined Response to Motions of Christoper Sierra and the Town of Anthony to Dismiss Plaintiffs' Second Amended Complaint"
- ECF No. 66, "Defendants' E.B., R.D., R.E., And S.W.'S Motion to Dismiss Plaintiffs' Second Amended Complaint"
- ECF No. 69, "Plaintiffs' Response to Defendants E.B., R.D., R.E. And S.W.'S Motion to Dismiss Plaintiffs' Second Amended Complaint"
- ECF No. 70, "Defendants' E.B., R.D., R.E., and S.W.'S Reply to Plaintiffs' Response to Defendants E.B., R.D., R.E., and S.W.'S Motion to Dismiss Plaintiffs' Second Amended Complaint"

---

[5] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

**LEGAL STANDARD**

A. Motion to Dismiss

Defendants filed each motion to dismiss, respectively, under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although a court accepts all well-pleaded facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff, "[c]onclusory allegations, unwarranted factual inferences, or legal conclusions are not accepted as true." *Allen v. Hays*, 65 F.4th 736, 743 (5th Cir. 2023) (cleaned up). Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 545, 555. In short, a complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. When a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.; Iqbal*, 556 U.S. at 678.

**ANALYSIS**

This opinion addresses four claims advanced by Plaintiffs in their Second Amended Complaint: (1) *Bivens* claims against Officer Sierra and individual Deputy U.S. Marshals, (2) a *Monell*[6] claim against the Town of Anthony, (3) negligence claims under the Texas Tort Claims Act against the Town of Anthony, and (4) gross negligence and recklessness claims against all

---

[6] *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658 (1978).

defendants. For the foregoing reasons, each claim, against each of these defendants, is hereby dismissed.

### A. *Bivens* claims against Officer Sierra and Individual Deputy U.S. Marshals

Plaintiffs bring this suit for damages against Officer Sierra and individual Deputy U.S. Marshals under *Bivens,* alleging officers violated Plaintiffs Hernandez and Frank Hernandez' Fourth Amendment Rights. Second Am. Compl. 17–18, ECF No. 43. In *Bivens*, the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). Whether a *Bivens* remedy exists is a question that is "antecedent" to the other questions presented. *Hernandez v. Mesa ("Hernandez I")*, 582 U.S. 548, 553 (2017)[7] (internal citation omitted). Thus, before assessing the specific facts of Plaintiffs claims here, the Court must first assess whether a *Bivens* remedy is available to them. For the foregoing reasons, the Court finds there is not[8].

In *Bivens*, the Court implied a Fourth Amendment claim for damages against federal officers even though no federal statute authorized such a claim. *Hernandez v. Mesa ("Hernandez II")*, 589 U.S. 93, 99 (2020). *Bivens'* reach has been extended to cover claims in three specific and limited circumstances: (1) a plaintiff who is "manacled" in front of his family

---

[7] This memorandum opinion will cite to *Hernandez v. Mesa*, 582 U.S. 548 (2017), which will be referred to as "*Hernandez I*," and *Hernandez v. Mesa*, 589 U.S. 93 (2020), which will be referred to as "*Hernandez II*."

[8] Because the Court determines no *Bivens* remedy is available in this case, the Court declines to address the merits of Plaintiffs' constitutional claims and Defendants' qualified immunity affirmative defense.

and then strip-searched in violation of the Fourth Amendment[9]; (2) a staff person suffering discrimination on the basis of sex by a congressman in violation of the Fifth Amendment[10]; and (3) an asthmatic prisoner in federal custody not receiving medical attention in violation of the Eighth Amendment[11].

Anything outside these three specific circumstances would extend *Bivens* to a "new context," and any *Bivens* expansion has since become "a 'disfavored' judicial activity." *Ziglar v. Abbasi,* 582 U.S. 120, 135 (2017). The Supreme Court has "gone so far as to observe that if the Court's three *Bivens* cases [had] been . . . decided today, it is doubtful that we would have reached the same result." *Hernandez II*, 589 U.S. at 101 (internal citations omitted). "For almost 40 years, [the Court has] consistently rebuffed requests to add to the claims allowed under *Bivens*." *Id.* at 101–102*; see e.g. Chappell v. Wallace*, 462 U.S. 296 (1983); *FDIC v. Meyer*, 510 U.S. 471 (1994); *Wilkie v. Robbins*, 551 U.S. 537 (2007); *Minneci v. Pollard*, 565 U.S. 118 (2012).

Still, when considering whether to extend *Bivens*, courts use a two-step inquiry that first asks whether the request involves a claim that arises in a "new context" or involves a "new category of defendants." *Hernandez II*, 589 U.S. at 102. The Supreme Court's "understanding of a 'new context' is broad." *Id*. The context is new if it "is different in a meaningful way from previous *Bivens* cases decided by this Court." *Abbasi*, 582 U.S. at 139. The Court has not created

---

[9] *See Bivens*, 402 U.S. at 389–90 ("The agents manacled petitioner in front of his wife and children, and threatened to arrest the entire family. They searched the apartment from stem to stern. Thereafter, petitioner was taken to the federal courthouse in Brooklyn, where he was interrogated, booked, and subjected to a visual strip search.").
[10] *Davis v. Passman*, 442 U.S. 228 (1979)
[11] *Carlson v. Green*, 446 U.S. 14 (1980).

an "exhaustive list of differences that are meaningful enough to make a given context a new one," but has provided "some examples [that] might prove instructive." *Id.*

> A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Id.* at 139–140. At the second step, if a court determines the case presents a "new" *Bivens* context, a court then asks whether there are any "special factors [that] counsel[] hesitation in the absence of affirmative action by Congress." *Abbasi*, 582 U.S. at 136 (internal citations omitted). The Supreme Court has not defined the phrase "special factor counselling hesitation." *Id.* And while the Court has not formally defined the phrase, it has provided some guidance. For example, "[t]he necessary inference . . . is that the inquiry must concentrate on whether the Judiciary is well suited . . . to consider and weigh the costs and benefits of allowing a damages action to proceed." *Id.* So in essence, "to be a "special factor counselling hesitation," a factor must cause a court to hesitate before answering that question in the affirmative." *Id.* As the Fifth Circuit has articulated, "[a] special factor is a sound reason to think Congress might doubt the efficacy or necessity of a damages remedy as part of the system for enforcing the law and correcting a wrong." *Canada v. United States*, 950 F.3d 299, 309 (5th Cir. 2020). If a special factor exists, *Bivens* should not be extended to the new cause of action. *Id.* at 309.

In the instant case, turning to the first *Bivens* step, it is clear this is a new context because this case differs from *Bivens* in several meaningful ways. First, this case involves a new category of defendants. *See e.g. Hernandez v. Causey*, 124 F.4th 325, 333 (5th Cir. 2024) ("Unlike

the Federal Bureau of Narcotics, which falls under the Department of the Treasury, both ICE and Border Patrol fall under the Department of Homeland Security—a "new category of defendants.") (internal citation omitted). In *Abassi*, the Court noted the "rank of the officers involved" can be a meaningful difference. *See Abbasi*, 582 U.S. at 139–40. The officers in *Bivens* were a part of the Federal Bureau of Narcotics, which falls under the Department of the Treasury. *Causey,* 124 F.4th at 333. Conversely, the officers involved in this case were a part of the Lone Star Fugitive Task Force for the Western District of Texas, which is a part of the U.S. Marshal Service, and more broadly the United States Department of Justice. *See* sources cited *supra* note 3. This is a new category of defendants for the purposes of *Bivens*.

Second, the officers in this case acted pursuant to an arrest warrant for a fugitive, whereas *Bivens* involved a warrantless search for narcotics. Second Am. Compl. 8, ECF No. 43; *Bivens*, 403 U.S. at 389. Judicial guidance varies across these contexts, which is considered a meaningful difference. *Abbasi*, 582 U.S. at 140 ("[T]he extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted" and "the statutory or other legal mandate under which the officer was operating" qualify as meaningful differences); *see generally Oliva v. Nivar*, 973 F.3d 438, 443 (5th Cir. 2020) (internal citations omitted) (recognizing "'[j]udicial guidance' differs across the various kinds of Fourth Amendment violations—like seizures by deadly force, searches by wiretap, *Terry* stops, executions of warrants, seizures without legal process ('false arrest'), seizures with wrongful legal process ('malicious prosecution'), etc.")). *Bivens* and the instant case thus involve different legal mandates. *See e.g. Oliva,* 873 F.3d at 443 (distinguishing when a hospital's ID policy gives rise to underlying dispute from when a narcotics investigation does).

Third, this case involves different underlying conduct by officers than in *Bivens*. Here, Plaintiffs allege officers searched the Hernandez home and found Plaintiff Hernandez showering after which he was "physically assaulted and forcibly arrested while he was partially, if not completely naked." Second Am. Compl. 10, ECF No. 43. Plaintiffs further alleged officers restrained Frank Hernandez at gunpoint, pointed a firearm directly at his face, and slammed him against the exterior wall of the house and handcuffed him. *Id.* at 9. While the Court acknowledges these allegations are unfortunate, they are meaningfully different from *Bivens*. There are no allegations officers arrested Plaintiffs in front of their family, nor that either was subjected to a visual strip search. In short, Plaintiffs' claims involve different conduct by different officers from a different agency. Therefore, this context is new.

Next, because the Court determined this case presents a new context, the second step in the *Bivens* inquiry requires assessing whether there are any special factors that counsel against extending *Bivens*. As the Supreme Court made clear, any extension of *Bivens* is a "disfavored judicial activity." *Abassi*, 582 U.S. at 121 (internal citations omitted). Special factors may include the existence of a statutory scheme for torts committed by federal officers. *See* 28 U.S.C. § 2680(h) (stating that 18 U.S.C. § 1346, which designates the United States as defendant, does not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution . . ." against "investigative or law enforcement officers"); *Abbasi*, 582 U.S. at 137 (noting "that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action").

Another special factor is the length of time Congress has gone without statutorily creating a *Bivens*-type remedy for this context. *Cantu v. Moody*, 933 F.3d 414, 423 (5th Cir. 2019).

As the Fifth Circuit recognized, "[b]ecause Congress has long been on notice that the Supreme Court is disinclined to extend *Bivens* to new contexts . . . its 'failure to provide a damages remedy' here suggests 'more than mere oversight.'" *Id.* at 423 (internal citations omitted). In the face of these considerations, "courts may not create [a cause of action], no matter how desirable that might be as a policy matter." *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001). Therefore, the Court declines to extend a *Bivens* remedy to Plaintiffs in this case. As a result, Plaintiffs *Bivens*/Fourth Amendment claims against Officer Sierra and the Deputy U.S. Marshals are hereby dismissed.

    B.  *Monell* claim against the Town of Anthony, TX

Similarly, Plaintiffs' *Monell* claim against the Town of Anthony fails. Plaintiffs allege the Town of Anthony has a policy or custom, or alternatively failed to adopt, "policies and customs to adequately train and supervise its officers to identify fugitives accurately; execute arrest warrants without violating the constitutional and statutory rights of individuals; and adequately train and supervise its police officers assigned" to the Task Force. Second Am. Compl. 20, ECF No. 43. Under 42 U.S.C § 1983, "municipalities may be held liable for their own constitutional torts, but they cannot be held vicariously liable for the constitutional torts of their employees," *Monacelli v. City of Dall., Tex.*, No. 24-10067, 2024 WL 4692025 at *1 (5th Cir. Nov. 6, 2024). Therefore, the inquiry here is whether the constitutional injuries Plaintiffs allege they suffered are "directly attributable" to something the Town of Anthony itself did by way of "official action or imprimatur." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Courts employ the three-factor *Monell* test to assess a municipality's own liability. *Monell*, 436 U.S. at 694 (1978). Under this test, a plaintiff must plausibly plead "an official policy (or custom), of which a policymaker can be charged with actual or constructive knowledge, and a constitutional

violation whose moving force is that policy or custom." *Valle v. City of Hous.*, 613 F.3d 536, 541–42 (5th Cir. 2010) (internal quotation marks omitted).

"A failure-to-train action is a type of *Monell* claim." *Hutcheson v. Dall. Cnty.*, 994 F.3d 477, 482 (5th Cir. 2021). "To establish *Monell* liability on a failure-to-train theory, a plaintiff must prove that: (1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Henderson v. Harris Cnty, Tex.*, 51 F.4th 125 (5th Cir. 2022) (citations omitted). To get past the pleading stage, "a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts.'" *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018).

Here, Plaintiffs do not meet the required threshold. Plaintiffs merely ask this Court to infer that "because [the] Town of Anthony has a population of no more than 5,000 and a police force no larger than 20 officers . . . the police force lack[s] the resources to train an officer to perform the duties of a Deputy United States Marshal in the Violent Offender Task Force." Second Am. Compl. 18, ECF No. 43. While the Court is required to construe all reasonable inferences in favor of Plaintiffs, the Plaintiffs' suggested inference is too far a stretch. The Court finds Plaintiffs allegations relating to the first *Monell* requirement are merely conclusory. Without more, the Town of Anthony's size and population do nothing to support Plaintiffs' allegation that training the polices are inadequate, or that the Town of Anthony failed to adopt any necessary policies. Because Plaintiffs fail to meet the first requirement, the Court need not address the remaining two requirements. Plaintiffs' *Monell* claim is hereby dismissed.

C. Negligence Claims under the Texas Tort Claims Act against the Town of Anthony

Plaintiffs also bring negligence claims against the Town of Anthony under the Texas Tort Claims Act ("TTCA"). Defendant Town of Anthony disputes that Plaintiffs have alleged sufficient facts to establish a waiver of sovereign immunity. Town of Anthony's Mot. to Dismiss 13–18, ECF No. 46. Generally, under Texas law, governmental immunity prohibits courts from adjudicating claims against a governmental unit. *Tex. Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999); *See* Tex. Civ. Prac. & Rem. Code § 101.001(3)(A) (defining a governmental unit to include "all departments" of the state). However, the TTCA waives that immunity for certain claims against a governmental unit. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004). The TTCA is limited and does not waive immunity for claims "arising out of assault, battery, false imprisonment or any other intentional tort. . . ." Tex. Civ. Prac. & Rem. Code § 101.057(2). A plaintiff must affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity. *See Tex. Dep't of Crim. Just. v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Here, the parties do not dispute the Town of Anthony is a governmental unit under the TTCA. Defendants only dispute that Plaintiffs did not allege sufficient facts to plausibly establish a waiver of the Town of Anthony's governmental immunity under the TTCA's "use" exception. Town of Anthony's Mot. to Dismiss 13–14, ECF No. 46.

Under the TTCA, namely the "use" exception, a governmental unit's sovereign immunity is waived for "property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if . . . (2) personal injury and death so caused by a condition or use of tangible personal or real

15

property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code § 101.021. To satisfy the "use" exception, a plaintiff must allege two elements. First, a plaintiff must allege a proper "use", which means "to put or bring into action or service; to employ for or apply to a given purpose." *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg,* 766 S.W.2d 208, 211 (Tex. 1989) (internal citation omitted). But, that some property is merely involved is not enough. *See e.g. Dall. Cnty Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 342–343 (Tex. 1998) (reversing the lower court's finding that "involvement of property is *sufficient* for waiver of immunity" to make clear that "the involvement of property is *necessary*.") Second, there must be allegations that using that property must have "actually caused" the injury. *Tex. Nat. Res. & Conservation Comm'n v. White,* 46 S.W.3d. 864, 869 (Tex. 2001).

Here, Plaintiffs meet the first element. Plaintiffs allege that as a "participating agency" with officers deputized as Special Deputy U.S. Marshals, the Town of Anthony supplied Officer Sierra with "standard issue equipment necessary for performance of [his] duties, to include handcuffs, firearms, and other equipment." Second Am. Compl. 7, ECF No. 43. Further, they allege Officer Sierra "was equipped with part of such equipment from his participating agency, the APD, and utilized this equipment and USMS VOTF equipment to effectuate the unlawful assault and unlawful arrest of Plaintiff Wenseslao Hernandez." *Id.* at 8.

However, Plaintiffs fail to satisfy the second element. Plaintiffs fail to allege any facts that any equipment provided by the Town of Anthony to Officer Sierra actually caused any injury despite admitting they had information to plead the specific actions taken by Officer Sierra during the incident. Second Am. Compl. 9, ECF No. 43 ("Plaintiffs have been unable to obtain the

necessary information to plead the specific actions taken by Defendants, excepting only Defendant SIERRA.") Even assuming Officer Sierra did "use" or "bring into . . . service" and "employ" his law enforcement equipment supplied by the Town of Anthony while conducting the law enforcement operation that led to Plaintiff Hernandez's arrest, that some property is merely involved is not enough. Without allegations drawing a clear nexus between the Town of Anthony's equipment and a specific injury, the "use" exception is not met. In fact, Plaintiffs allege that the Florida warrant for the wrong person was the cause of the underlying injuries. Second Am. Compl. 8, ECF No. 43. But, Texas courts have long recognized that "information" is not tangible property for purposes of the TTCA. *See Dallas Cnty. v. Harper,* 913 S.W.2d 207, 208 (Tex. 1995) ("[S]imply reducing information to writing on paper does not make the information 'tangible personal property.'" (citing *Univ. of Tex. Med. Branch v. York,* 871 S.W.2d 175, 179 (Tex. 1994)).

Moreover, Plaintiffs' allegations as to injuries suffered by Frank Hernandez also fall short. The Second Amended Complaint does not contain any allegation that Officer Sierra was in any way involved in Frank Hernandez's seizure, assault, or handcuffing. *See* Second Am. Compl. 9–10, ECF No. 43. In the same vein, there are no allegations that any tangible personal property supplied by the Town of Anthony was used to assault or injure Frank Hernandez. *See id.* Plaintiff's response fails to direct the Court to specific allegations in the Second Amended Complaint that establish a nexus between the Town of Anthony's property and Frank Hernandez's alleged injury. *See generally* Pls. Combined Resp. 22–23, ECF No. 57 (responding to the Town of Anthony's arguments regarding causes of action under the Texas Tort Claims Act).

Lastly, Rosana Hernandez's claim under the Texas Tort Claims Act similarly fails because as the Town of Anthony correctly points out, she fails to set out any factual allegations about how her alleged emotional distress is connected to the Town of Anthony's tangible personal property. Town of Anthony's Mot. to Dismiss 18, ECF No. 46. As to her claim, Rosana Hernandez simply alleges she "witnessed the aftermath of the assault and false imprisonment and arrest of Plaintiffs Frank Hernandez and Wenseslao Hernandez." *Id; see also* Second Am. Compl. 11, ECF No. 43. In sum, Plaintiffs have failed to allege sufficient factual allegations to overcome the Town of Anthony's sovereign immunity, thereby barring their claims under the Texas Tort Claims Act.

D.  Gross Negligence and Recklessness Claims Against all Defendants

Finally, Plaintiffs' gross negligence and recklessness claims against all defendants are hereby dismissed. For these claims, Plaintiffs seek "damages as permitted by 42 U.S.C. §1983, 42 U.S.C. §1985, the Texas Tort Claims Act, Texas common law, or any combination therefor." Second Am. Compl. 22, ECF No. 43. As to Officer Sierra, this Court issued its "Order Granting Defendant Town of Anthony, Texas' Motion to Dismiss Defendant Christopher Sierra under the Texas Civil Practice & Remedies Code Election of Remedies Provision," ECF No. 16, on July 15, 2022. In this order, the Court dismissed "all the state law claims against Defendant Christopher Sierra." *Id.*

Next, as to the Town of Anthony, in the instant order, this Court determined that Plaintiffs failed to show a valid waiver of the Town of Anthony's governmental immunity under Texas law. As such, the Court will not address the merits of Plaintiffs' gross negligence and recklessness claims because the Town of Anthony is entitled to governmental immunity as a subdivision of the state. *See generally Jones*, 8 S.W.3d at 638 (explaining that generally, under

Texas law, governmental immunity prohibits courts from adjudicating claims against political subdivisions of the state government). Lastly, as to the individual Deputy U.S. Marshals, Plaintiffs' claims also fail. In their response to the Deputy U.S. Marshals' motion to dismiss, Plaintiffs assert their "Second Amended Complaint does not allege gross negligence or recklessness as separate causes of action but retains them because they negate Defendants' repeated assertions that they acted with a 'valid arrest warrant' which, they argue, entitles them to the defense of qualified immunity." Pls' Resp. to Defs. E.B., R.D., R.E. and S.W.'s Mot. to Dismiss Pls' Second Am. Compl. 17, ECF No. 69. As noted above, this Court determined no *Bivens* remedy is available in this case. The Court therefore declines to address the merits of Plaintiffs' constitutional claims, Defendants' qualified immunity affirmative defense, which, according to Plaintiffs' response, includes Plaintiffs' gross negligence and recklessness claims.

## CONCLUSION

On July 6, 2023, this Court issued a short order, ECF No. 76, granting Defendants' motions, ECF Nos. 46, 49, 66, noting a memorandum opinion was forthcoming. For the reasons stated above, the motions to dismiss are hereby **GRANTED**.

**IT IS SO ORDERED**.

**SIGNED** this **14th** day of **February 2025**.

_____
THE HONORABLE DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE